**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **STEVEN CROFTS, Individually and** | § | |
| **on behalf of other employees similarly** | § | |
| **situated** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. 4:15-cv-00919** |
| | § | |
| **DOUBLEBARREL DOWNHOLE** | § | |
| **TECHNOLOGIES** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT**</u>

TO THE HONORABLE COURT:

The issue before the Court is whether Plaintiff Steven Crofts was misclassified as

exempt from the Fair Labor Standards Act and denied overtime pay. Defendant has filed

a motion for summary judgment based on administrative and outside sales exemptions.

Plaintiff opposes the motion because a genuine issue of material fact exists as to whether

Plaintiff qualifies for any exemption to the FLSA.  Steven Crofts files the following in

opposition to summary judgment, and would show the Court as follows:

**STANDARD OF REVIEW**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is

appropriate only "if ... the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue

1

as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A fact is material if it could affect the outcome of the lawsuit, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Houston Police Officers Union v. City of Houston*, 330 F.3d 298, 301 (5th Cir. 2003).

The FLSA requires employers to pay employees at one and one-half times their regular rates of pay for hours worked in excess of forty in a week. 29 U.S.C. § 207(a). Plaintiff contends that he was misclassified, and therefore was not paid time and a half for overtime. Exemption from the FLSA is an affirmative defense, and exemptions are construed narrowly against the employer. *Barefoot v. Mid-America Dairymen*, 16 F.3d 1216, 1994 WL 57686 at *2; *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992); *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966); *Marshall v. Sundial Associates*, 588 F.2d 120, 122 (5th Cir. 1979); *Brennan v. Texas City Dike & Marina, Inc.*, 492 F.2d 1115, 1117 (5th Cir. 1974). This means that any ambiguity in the exemption statute should be resolved in favor of the employee and in favor of non-exempt status. However, Defendant cannot show that either of the exemptions it asserts can apply to an employee with Plaintiff's duties.

## ARGUMENT AND AUTHORITIES

**1. Plaintiff Is A "Blue Collar" Worker Who Cannot Be Denied Overtime Under The Highly Compensated Employee Exemption**

2

The highly compensated employee exemption applies to an employee with a total annual compensation of at least $100,000; who "customarily and regularly" performs one or more of the exempt duties or responsibilities of an exempt administrative employee; and has a primary duty that "includes performing office or non-manual work" 29 C.F.R. §541.601 29 U.S.C. § 213(a)(1). Department of Labor regulations define an administrative employee as as any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week [$23,660 per year] . . .
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). "Primary duty" is determined by considering all the facts in the case, such as the relative importance and amount of time spent performing executive versus nonexempt duties, freedom from direct supervision in performing executive duties, and pay compared to nonexempt employees. 29 C.F.R. § 541.700.

Whether or not the highly compensated employee exemption applies, Mr. Crofts would be misclassified if he did not perform any of the administrative duties listed in 29 C.F.R. § 541.200. Thus, the Court must address whether DoubleBarrel has substantially alleged and provided uncontroverted evidence that Crofts performed any of the listed duties.

Additionally, a separate subsection of the FLSA regulations provides that the executive exemption does not apply to "'blue collar' workers who perform work

3

involving repetitive operations with their hands, physical skill and energy" and who are trained "through apprenticeships and on-the-job training, not through the prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists." 29 C.F.R. § 541.3(a). If Mr. Crofts meets those qualifications, then the exemption cannot apply.

Below, Plaintiff will show that he did not meet the factors to be considered an exempt administrative employee.

### a. The "Blue Collar" Exclusion Applies to Steven Crofts

"Manual laborers or other 'blue collar' workers" without advanced degrees who perform "repetitive operations with their hands, physical skill and energy" are excluded from the executive exemption. 29 C.F.R. § 541.3(a). "Blue collar" is not defined, but examples of blue-collar professions are provided:

> [N]on-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers and laborers have always been, and will continue to be, entitled to overtime pay.

29 C.F.R. § 541.3(a). Presumably the exclusion does not apply to office workers, including those who lack advanced degrees and perform repetitive operations with their hands. Some office workers may be nonexempt, while others may fall under the "white collar" executive, administrative, and other exemptions. The administrative exemption conflates "office" and "non-manual" work. 29 C.F.R. § 541.200 (administrative

employees perform "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers").

Courts thus tend to restrict the blue collar exclusion to traditional "manual labor" outside of an office setting, with varying interpretations of the word "manual." However, manual labor accurately describes Mr. Crofts's primary job duty. The evidence reflects that Crofts performed traditional blue collar work and manual labor.

The Field Engineer position at Double Barrel is a manual labor job and does not require any Engineering training or experience. Double Barrel hired Mr. Crofts as a Field Engineer without a college degree and gave him on the job training. [#tdab Reference #1] This is very unlike those who undertake a "prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists." 29 C.F.R. § 541.3(a). Plaintiff's training consisted of the reading the operations manual and shadowing another Field Engineer for one or two days. See Dkt. No 23-1, p. 99-100, Crofts Dep. Trans. P. 69-70.

There is a genuine issue of material fact as to whether Mr. Crofts exercised any independent judgment or discretion. Curtis Lanning testified that Crofts exercised discretion and independent judgment because he "would advise customers on the best way to deliver their plan with a directional drilling engineer." Exh. 3, Lanning Dep. Trans. 83:1-4. In contrast, Mr. Crofts repeatedly stated that he was not qualified to do so and was even discouraged from making these types of recommendations to protect the

company from unnecessary liability. Exh. 1, ¶18. There is a genuine issue of material fact on whether Steven Crofts advised the directional driller on where or how to drill.

Notably, there is documentary evidence outside of Plaintiff's testimony that where and how to drill is in the purview of the customer's Directional Driller. Exhibit 4 attached this motion shows emails[1] from two DoubleBarrel clients' directional drillers. Attached to these emails are detailed proposals with bit data, motor data, and drilling depth information. Exhibit 4 also includes daily activity reports prepared by the directional drillers, which contain the kind of detailed analysis and data that Defendant insists Mr. Crofts was responsible for. But Curtis Lanning also testified that Crofts did not have the software or expertise needed to create a drilling plan, which would tend to support Plaintiff's claims. See Exh. 3, p. 113-115.

The parties have presented two completely opposite accounts of Plaintiff's duties on every factor of the exemption. Because the Court will have to weigh the evidence and engage in a credibility determination to decide whether the HCE applies, or whether the Crofts falls under the blue collar exclusion, summary judgment is manifestly inappropriate.

> **b.  *It Cannot Be Determined Whether Plaintiff Earned A Salary Of At Least $100,000 For The Relevant Time Period***

Double Barrel has failed to provide proper summary judgment proof of Mr. Croft earnings as a Field Engineer and cannot establish the pay requirement for a HCE. In

---

[1] Company name and contact information has been redacted to protect confidentiality.

discovery, Plaintiff requested all records of his pay. However, Defendant only produced

paycheck stubs for the year 2014. However, this case was filed on April 8, 2015. The

relevant statutory period that encompasses the position for which Mr. Crofts is seeking

overtime is from April 2012 to May 2014 when he worked as a Field Engineer and before

his promotion. DoubleBarrel has only produced paycheck stubs for the year 2014 which

show that Mr. Crofts earned more than $100,000. Although Defendant claims that Mr.

Crofts made over $200,000 in each of those years, Mr. Crofts denies that allegation. See

Dkt. No. 23-1, p. 111, Defendant's Exhibit B: Steven Crofts Deposition Transcript 117:3-

11. Nevertheless, the amount of his compensation alone is insufficient to prove the HCE

exemption if Mr. Crofts does not meet the other two factors of the test.

### c. Plaintiff Did Not Customarily and Regularly Exercise Independent Judgment Or Discretion

The "customary and regular" performance of exempt duties is key to this

exemption. Under the FLSA regulations, this must be "greater than occasional" but may

be "less than constant". 29 C.F.R. § 541.207(g). Defendant argues that Mr. Crofts

customarily and regularly exercised discretion and judgment, and that his work directly

related to the management or general business operations of DoubleBarrel's customers.

The case law also makes clear that where an employee is "primarily involved in

producing the product of the company rather than 'servicing' the company, the

administrative exemption does not apply." *Villegas v. Dependable Construction Services,*

*Inc*., 2008 U.S. Dist. LEXIS 98801, 2008 WL 5137321 at *7 (S.D. Tex. Dec. 8, 2008). In

the present case, Crofts's primary duty was operating the RSS tool. DoubleBarrel is a supplier of downhole drilling tools and leases them to oil and gas companies for use, with a Field Engineer to operate it. In other words, Plaintiff was primarily involved in producing the product of Defendant, rather than servicing the Defendant, and therefore the administrative exemption does not apply.

Mr. Crofts has stated that his primary duty was the operation of the Rotary Steerable System, or RSS tool, which is DoubleBarrel's proprietary product. Exhibit 1, Crofts Decl. ¶ 4. The wellbore path plan which allows the customer to maximize recovery of oil and gas from the well, "is created by the customer before Field Engineers even get on site. At the well site, directional drillers are responsible for carrying out that plan and are the only ones who can change it." *Id.* at ¶ 9. "The key distinction is that I operated the tool, but the directional drillers were the authority on drilling operations. . .They would tell me how to carry out the well plan and I would use the RSS tool to do so as best I could. If the tool was not getting the job done, I couldn't do much. Either I called for help or tried a manual fix such as replace cords or hammer union sensors. Otherwise I had to just ride it out, or if the directional driller decided to stop drilling, remove the tool." *Id.* at ¶ 13; see also Dkt. No. 23-1, p. 96-98, *Crofts Dep. Trans*. p. 54-65.

Mr. Crofts also states that he did not interpret the MWD data, create 3D models of the drill bit location mapped against the drill plan, or make recommendations like changes to the weight on drill bit or RPM of the drill, either because the computer program did not have the feature, he did not know how to do it or simply did not have the

authority. Exh. 1, Crofts Decl. at ¶15. "In fact, due to liability issues I was discouraged from making these kinds of recommendations." *Id*. As far as "stop work authority", usually everyone at the wellsite was given the authority to stop operations if they became dangerous—for example, a truck was about to back into a forklift or pipes were stacked precariously. *Id*.

This is a far cry from the picture painted by DoubleBarrel--which shows that there is a disputed issue of material fact here which precludes summary judgment. Defendant has consistently misrepresented Plaintiff's job duties and testimony in making its argument for exemption. For example, Defendant states:

> The [directional driller and Plaintiff] would decide the best wellbore path plan to achieve the drilling target location so that the operator could achieve the maximum recovery of hydrocarbons, while ensuring safety by not drilling into dangerous areas or surrounding wells, which could cause an explosion. Crofts Dep. 109:17-110:6.

Dkt. No. 23, p. 5. Yet, the Plaintiff's actual testimony was "I assisted [the directional driller] to see what was on the computer, but when you say 'assist the directional driller to place the hole within the desired coordinate,' unfortunately, that was all his call." Plaintiff went on to agree that he had no role other than showing the directional driller the data.

As another example, Defendant stated that "the MWD readout reflects the inclination and azimuth (i.e. location) of the drill bit, and from this Plaintiff would create a 3D model of the location of the drill bit versus the drill plan. Crofts Dep. 112:6-17."

Dkt. No. 23, p. 8. The plaintiff's actual testimony is statement is in answer to a question about what types of data the RSS tool shows. Mr. Crofts replied:

> Well, if I recall properly, it shows an inclination and an azimuth heading, and there were other values there that showed -- I'm not even sure what that P pump number represented, and so on some tools you would also get a shock/vibe category number, and I'm not sure exactly what that showed, but when I was operations manager, they told us that any number above five -- they actually structured a plan that anything above five was dangerous to the tool or sketchy. I don't remember, actually.

Mr. Croft's deposition testimony contradicts the statement DoubleBarrel has fashioned in reliance on this testimony, and these types of overreaches and misrepresentations are rife in Defendant's motion.

Additionally, Defendant relies on the testimony of Curtis Lanning for much of this information. Mr. Lanning is not a Field Engineer for DoubleBarrel. During Plaintiff's tenure, Mr. Lanning worked as the Mechanical Engineering Manager and was promoted to Vice-President of Engineering. He works primarily works in the office, not in the field. Mr. Lanning even testified that he has never worked with Steven Crofts in the field. Exh. 2, Curtis Lanning Deposition Trancscript p. 29. Therefore, many of his statements are hearsay with no foundation and should be stricken. A separate motion to strike is being filed contemporaneously with this brief.

Mr. Lanning stated that Dave MacNeill and Ruben Rodriguez were involved in the process of how to deliver the best well plan, and provide counseling service to the client. Exh. 2, Lanning Dep. Trans. p. 119-121. Therefore, it is undisputed that both Dave MacNeill (Double Barrel's president) and Ruben Rodriguez (Field Service Manager)

provided consultation to the customers which was relayed through Mr. Crofts. There is a genuine issue of material fact on whether or not Mr. Croft originated any of the advice or consultations to the customers or was simply relaying the information from his supervisors and president. Mr. Crofts did not receive any training on how to create well path plans, and testified that "if we're telling them drilling parameters and we're telling them how to run the tool, how to be directional drillers, [] we're assuming a liability." Dkt. No. 23-1, p. 99, Crofts Dep. Trans. 69. A jury would have to determine who is the more credible witness on this issue, therefore creating a genuine issue of material fact.

### d. *Plaintiff's Primary Duty Consisted of Blue-Collar, Manual Labor*

The administrative exemption is appropriate when an employee has a "primary duty" of performing work directly related to management or general business operations. 29 C.F.R. § 541.705. This includes accounting, quality control, human resources, legal and regulatory compliance, and other similar activities, for example. *Id*. Although "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time[,] time alone ... is not the sole test. 29 C.F.R.§ 541.103. The employee's primary duty will usually be what he does that is of principal value to the employer, not the collateral tasks that he may also perform, even if they consume more than half his time. *See Donovan v. Burger King Corp*., 672 F.2d 221 at 226-27 (1st Cir. 1982); see also *Paul v. Petroleum Equipment Tools Co.,* 708 F.2d 168, 170–71 (5th Cir.1983).

Plaintiff argues that his primary duty, and what was of principal value to the employer, was his operation and maintenance of the RSS tool. Mr. Crofts has testified that his job included a great deal of manual labor. In order to rig up and rig down, he had to run power cables across the tops of buildings using a safety harness, use a sledge hammer to connect hoses, clean and service the transducer, and clean the drill bit. See Exh. 1, Crofts Decl. ¶ 5-8. See Exhibit 2 for photos of hydraulic unit, hoses, pipe screen, rig floor, protective gear, and truck loading. The rig up process could take as long as 9 hours or 19—essentially, almost a full day no matter what. Dkt. No. 21-3, p. 114/Crofts Dep. Tran. p. 126:18-128:21. The rig down process could take even longer, from 8 to 36 hours. The total time spent at the well site for a customer varied from one to fourteen days, so rigging up and down could be a significant amount of time in comparison. However, the manual labor duties were not limited to rig up and rig down. Mr. Crofts also tried manual fixes to troubleshoot mechanical problems with the tool, such as replacing cords, hammering union sensors, checking hydraulic fluid in the pump, swap out choke valves, repair O-rings in the stand pipe, lash down cables or replace the hydraulic unit. Exh. 1, Crofts Decl. at ¶13; see also Dkt. No. 23-1, p. 97-98/Crofts Dep. Trans. p. 58-63. He also spent time in the shop cleaning and maintain the tool. The amount of time Crofts spent in the shop is disputed, but the not the fact that it was manual labor. See Exh. 3, Lanning Decl. p. 21-23.

In this case, DoubleBarrel asserts that Mr. Crofts operation of the RSS tool from a trailer on the well site constitutes "office work", but presents no authority in support of

this contention. Defendant relies heavily on *McPherson v. Leam Drilling Systems*, 2015 U.S. Dist. LEXIS 40973, 2015 WL 1470554 (S.D. Tex. Mar. 30, 2015). The case merely mentions that the plaintiffs in that case performed work primarily in a "makeshift office" that was a trailer. Plaintiff contends that a trailer at a wellsite is not an office for purposes of the administrative exemption. On all other grounds, *McPherson* is distinguishable. While the Court did hold that the "limited manual labor performed during installation and removal of the MWD tool [did] not appear to be enough to by itself to satisfy the blue collar exclusion", this determination was made in reliance on declarations from other employees in the class member's job position. Ultimately, despite the arguments made for the executive exemption, Judge Melinda Harmon was not persuaded and granted conditional certification.

Whether or not the trailer was an office within the meaning of the exemption is inapposite, because Mr. Crofts did not perform office and non-manual tasks. He was actively operating the RSS Tool. Technology has transformed the workplace, but just because the RSS Tool can be operated through laptop commands does not make Plaintiff's job non-exempt. DoubleBarrel states that Plaintiff "performed the tasks of a MWD in addition to non-manual tasks of greater sophistication" and names a laundry list of tasks like monitoring P-pump numbers, conferring with directional driller on inclination and azimuth, and troubleshooting problems with the drill. However, Plaintiff disputes that he performed those duties. Contrary to Defendant's statement that Crofts monitored "critical data points" such as the P-pump number, Mr. Crofts stated in his

deposition that he did not even know what the P-pump number represented, and that rather than interpret the data, he shared it with the directional driller and waited for further instruction.

Mr. Crofts testified repeatedly in his deposition that he did ***not*** have the knowledge or authority to perform exempt tasks such as interpreting the tool data and applying his analysis to solve problems with the drilling plan. For example, see Dkt. No. 23-1 at p. 96-97/ Dep. Trans. p. 54-59. Additionally, Defendant's own corporate representative supports some of these statements. "I'm not sure if he's ever had a training course on how to design a wellbore path plan. It's not his job to write a drilling plan." Exhibit 3, Lanning Dep. Trans. 80:1-3. Mr. Lanning also agreed that when customers asked Mr. Crofts for advice on "where and how to drill", Crofts would consult his superiors and relay their recommendations to the client. *Id*., p. 83-84, 119.

Given the conflicting facts presented by the parties, there is a genuine issue of material fact as to whether Plaintiff's primary duty included the "customary and regular" performance of office or non-manual work.

## 2. Plaintiff Cannot Be Exempt Under The Outside Sales Exemption

### a. *Plaintiff Did Not Customarily And Regularly Make Sales As A Field Engineer*

Mr. Crofts worked for DoubleBarrel in multiple capacities during his tenure. From October 2011 to about May 2014, Mr. Crofts was a Field Engineer. He is seeking unpaid overtime for this period only. From May 2014 to March 2015, he had the title of Operations Manager. Exh. 1, Crofts Decl. ¶ 18. His duties during this time are not

14

relevant here because Mr. Crofts only seeks unpaid overtime for his time as a Field Service Engineer.

As a Field Engineer, Mr. Crofts said that his primary duty was to operate the RSS tool and help the directional drillers run it. Exh. 1, ¶ 4. Mr. Crofts also said that he "was to rig up the surface equipment, rig up the computer, send off records and stuff back to the home office and, under the direction of the directional driller, pick what drilling commands the tool would use." Dkt. No. 23-1, p. 95, Crofts Dep. Trans. 52:2-21. Curtis Lanning, DoubleBarrel's corporate representative, stated that his job included creating drill summary reports, setting up the equipment, monitoring the data, run the tool, and provide information to his supervisors and Defendant's customers Exh. 3, p. 121:4-25. While these explanations differ somewhat (and the parties accounts diverge significantly as to what comprised Plaintiff's primary duty) what they have in common is that neither party claims that a Field Engineer's primary duty was to make sales. There is no genuine issue of material fact here. Without meeting this prong of the test, Mr. Crofts cannot possibly qualify for the outside sales exemption for the time he worked as a Field Engineer.

Since there is no dispute that Mr. Crofts's primary duty as a Field Engineer was not making sales, other factors need not be explored as to that time period. However, in the interest of thoroughness Plaintiff will refute Defendant's remaining arguments.

### b. *Crofts Does Not Meet The Factors For Exemption*

Courts have looked at several factors in applying the outside sales exemption—whether the employee solicits new business; receives specialized sales training; was hired and/or denominated as a salesperson; and whether the position was advertised as a sales position. *Fields v. AOL Time Warner, Inc.*, 261 F.Supp 2d 971, 974 (W.D. Tenn.) But Mr. Crofts does not meet any of them. When asked about Mr. Croft's sales duties, Double Barrel's corporate representative testified that Plaintiff was paid only a base salary and a day rate, and was not paid a commission. Exh. 3, Lanning Dep. Trans. 26:1-4. Notably, the purported pay records produced by Defendant do not show any entries whatsoever for sales commission. Nor was Mr. Crofts given authority to write contracts or negotiate prices. Exh. 3, 26-27. Mr. Lanning admits that Crofts "would not have been a commission-based sales guy by any stretch during that period of time [as a Field Engineer]." Exh. 3, p. 103:8-15.

Mr. Crofts stated that making sales was not a part of his job. "I occasionally met with clients at their offices at the request of Dave MacNeill. These meetings took place after or in between jobs in the field and was more like customer service. I didn't write contracts, get commissions, or have the authority to adjust the prices we charged in order to close a deal. I didn't do billing or invoices or have any input into how much we charged. Anna Espinosa was the sales representative at that time." Exh. 1, Crofts Decl. ¶19. As for his appearance at the Offshore Technology Conference, Mr. Crofts stated that "everyone in the company worked at the booth. At the request of Dave MacNeill, one year I helped with some of the materials. But the only thing I was regularly responsible

for at the conference was putting up and taking down the physical booth and display." *Id.* at ¶ 20.

The only evidence DoubleBarrel offers in support of the outside sales exemption is Mr. Crofts's resume and LinkedIn page—both of which list the sales related information under his time as the Operations Manager. Defendant has no competent summary judgment evidence to support its assertion of this exemption. Additionally, Mr. Crofts testified that he did not have sales duties during his time as a Field Engineer, which is the only time period for which he is alleging unpaid overtime. At a best, Mr. Crofts has shown that the outside sales exemption clearly did not apply. At a minimum, there is a genuine issue of material fact on the exemption, and summary judgment is improper either way.

### 3. A Genuine Issue of Material Fact Exists as to Willfulness

Claims under the FLSA must be filed within two years after the cause of action accrues, or within three years if the alleged violation was "willful". 29 U.S.C. § 255(a). The test for willfulness is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). In common usage, the word "willful" is considered synonymous with words such as "voluntary," "deliberate" and "intentional." *McLaughlin*, 486 U.S. at 133, 108 S.Ct. at 1681.

The FLSA uses a two-year statute of limitations for non-willful violations, and a three-year statute of limitations for willful violations.  29 U.S.C. §255(a).  The test for

willfulness is whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).

Plaintiff bears the burden of proof on this issue, but in order to survive summary judgment on this issue, Plaintiff need only designate specific facts demonstrating a genuine issue for trial. Whether an employer acted willfully is a question of fact, and summary judgment in favor of the employer is inappropriate if the plaintiffs have introduced evidence sufficient to support a finding of willfulness. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ*., 579 F.3d 546, 552 (5th Cir. 2009).

On its face, it appears that DoubleBarrel has failed to keep accurate records of its employees' hours worked and pay. DoubleBarrel has only produced pay records for one of the three years at issue for damages in this lawsuit. Mr. Crofts was not told to keep track of the hours he worked beyond filling out a sheet for his day rate compensation, which did not show the number of hours he worked, and Defendant has never alleged that it required Crofts to clock in and clock out or otherwise make sure every hour of his work was accurately accounted for. Based on these facts, Crofts has sufficiently alleged willfulness. *See Perkins v. Total Building Maintenance, Inc*., No. 3:14-CV-2398-B, 2015 WL 1609193, at *4 (N.D. Tex. Apr. 7, 2015) (Boyle, J.) (holding that the plaintiff had sufficiently alleged willfulness when he averred that the defendants "intentionally instructed him and other employees to refrain from clocking in while traveling between job sites").

18

It appears that Double Barrel's did not come up with its exemption defense until it was sued, and then attempted to retroactively find a basis to claim good faith. The basis for Double Barrel's good faith defense was an un-scientific "salary survey" conducted by Steven Crofts made when he was asking for a raise. Exh. 3, Lanning Dep. Trans. 148:4-19.Defendant's corporate representative Curtis Lanning stated, "We didn't do any sort of formal exemption analysis. This is what we did: We looked at the industry and figured out what made the most sense and we believed that we were paying the correct way and by far the correct amount for these positions in the industry." *Id*. The emails that DoubleBarrel relied upon are attached herein as Exhibit 5, and are the same documents presented by Curtis Lanning at his deposition. Defendant did not consult an attorney, legal precedent, Department of Labor regulations, or even the FLSA statute in determining that Mr. Crofts was exempt as a Field Engineer.

Additionally, Double Barrel's handbook states, "All employees are also classified as either "exempt" or "non-exempt." An exempt employee is one who, under the provisions of the federal Fair Labor Standards Act, state or local law, does not receive additional pay for overtime Work." Exhibit 5, p. 7. "Non-exempt employees will be paid overtime compensation in accordance with applicable laws." Exh. 5, p. 8. Because DoubleBarrel's handbook purports to know the laws surrounding employee's rights to overtime pay, this knowledge is imputed and they knew, or should have known what the law actually was. S*ee Carman v. Meritage Homes Corporatio*n, 37 F. Supp. 3d 860, 870 (S.D. Tex. 2014) (holding that a reasonable jury could find willfulness when an

employer's employee handbook stated that the employer's payment practices complied with the FLSA, demonstrating that the employer "knew the requirements of the FLSA").

Because a reasonable jury could find that the first set of violations was "willful," the court should decline to hold, as a matter of law, that the two year statute of limitations applies to these alleged violations. *See Elwell v. University Hopsitals Home Care Services,* 276 F.3d 832 at 844 (6th Cir. 2002)(stating, in a case in which the employer failed to keep records entirely, that "an employer's recordkeeping practices may . . . corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime"); *see also Manning v. City of Scottsboro*, No. CV-12-S-4108-NE, 2013 WL 365786, at *4 (N.D. Ala. Jan. 30, 2013) ("[The plaintiff] alleges that defendant[s] failed to keep accurate records of the time he worked, which suggests that defendant[s] may have been willfully blind to whether he was owed overtime pay."); *Morgan v. Francois*, No. 4:04-CV-79-JCH, 2006 WL 3032162, at *3 (E.D. Mo. Oct. 19, 2006) ("Plaintiff stated that [the defendant employer] never kept accurate records, which can be used as evidence of a willful violation."); *Garcia v. Tenafly Gourmet Farms, Inc.*, No. CIV. A. 11-6828 SRC, 2012 WL 715316, at *2 (D.N.J. Mar. 5, 2012) (When complaint alleged that "[d]efendants . . . failed to keep a record of [p]laintiff's hours or pay, and did not ask [p]laintiff to clock in or out of work," the complaint was sufficient to support a finding of willfulness).

Willful violation of the FLSA is one of Plaintiff's claims, and affects the amount of damages he can receive if successful in this action. It is a material issue, and

disagreement on the facts surrounding this issue make summary judgment wholly inappropriate.

## CONCLUSION AND PRAYER

The effect of the highly compensated employee exemption is to permit the application of the executive or administrative exemptions on a reduced evidentiary showing. That does not mean, however, that the exemption may be applied in the face of disputed evidence, as is outlined above. Exemptions to the FLSA are limited to those employees 'plainly and unmistakably within [the] terms and spirit' of the exemption. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). There is a genuine issue of material fact as to Plaintiff's exemption from the FLSA. Accordingly, Plaintiff prays the Court deny the motion for summary judgment in its entirety.

Respectfully submitted,

TRAN LAW FIRM L.L.P.

/S/Trang Q. Tran
Trang Q. Tran
Texas Bar No. 00795787
Alecia D. Best
Texas Bar No. 24092129
9801 Westheimer Road, Suite 302
Houston, Texas 77042
Telephone: (713) 223-8855
Facsimile: (713) 623-6399
**ATTORNEYS FOR PETITIONER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was forwarded on June 6, 2016, in the following manner to:

***VIA DISTRICT ELECTRONIC FILING NOTIFICATION OR E-MAIL, AND FAX***

William R. Stukenberg
*Attorney-in-Charge for Defendants*
State Bar Number: 24051397
Southern District I.D. No.55792
JACKSON LEWIS P.C.
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone: 713.568.7854
Facsimile: 713.650.0405
Email: william.stukenberg@jacksonlewis.com


OF COUNSEL:

A. Robert Fischer
State Bar No. 07043395
Federal I.D. No. 1672061
JACKSON LEWIS P.C.
816 Congress Avenue, Suite 1530
Austin, Texas 78701
Telephone: 512.362.7100
Facsimile: 512.362.5574
Email: fischera@jacksonlewis.com


/S/Trang Q. Tran
Trang Q. Tran